# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICHELLE LEE PFITZER,

                **Plaintiff,**

        **v.**                            **Case No. 20-CV-49**

ANDREW M. SAUL,
**Commissioner of the Social Security Administration,**

                **Defendant.**

## DECISION AND ORDER

### 1. Introduction

Plaintiff Michelle Lee Pfitzer alleges she has been disabled since December 15, 2015. (Tr. 16.) She seeks disability insurance benefits and supplemental security income. After her applications were denied initially (Tr. 16) and upon reconsideration (Tr. 16), a hearing was held before an administrative law judge (ALJ) on August 2, 2018. (Tr. 16.) On January 24, 2019, the ALJ issued a written decision concluding that Pfitzer was not disabled. (Tr. 33) After the Appeals Council denied Pfitzer's request for review on November 14, 2019 (Tr. 1-4), she filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

1

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Pfitzer "has not engaged in substantial gainful activity since December 15, 2015[.]" (Tr. 19.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Pfitzer has the following severe impairments: "fibromyalgia, migraines, bipolar disorder, mood disorder, attention deficit hyperactivity disorder (ADHD), and anxiety[.]" (Tr. 19.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a

Case 1:20-cv-00049-WED   Filed 10/20/20   Page 2 of 23   Document 21

severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Pfitzer "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 21.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Pfitzer has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, crouching, kneeling and crawling; and no exposure to unprotected heights or unprotected moving machinery. She is further limited to understanding, carrying out and remembering no more than simple instructions; simple, routine tasks performed in an environment free from fast paced production requirements, involving only simple work-related decisions, and few, if any, workplace changes; and only occasional interaction with the public, coworkers or supervisors.

(Tr. 23.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. Pfitzer's past relevant

3

work was as a nursing assistant and electronics assembler. (Tr. 31.) The ALJ concluded that Pfitzer "is unable to perform any past relevant work[.]" (Tr. 31.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that, "considering [Pfitzer's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 31.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE) who testified that a hypothetical individual of Pfitzer's age, education, work experience, and RFC could perform occupations such as document preparer, addresser, and call out operator. (Tr. 32.) After finding that Pfitzer could perform work in the national economy, the ALJ concluded she was not disabled. (Tr. 32.)

## 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Waiver of right to counsel

Pfitzer was not represented by counsel at the hearing before the ALJ. It is well-established in the Court of Appeals for the Seventh Circuit that, when a claimant appears unrepresented before an ALJ, the ALJ must advise her of the availability of counsel. The Seventh Circuit has been very clear as to what is necessary before an individual may be deemed to have waived her statutory right to be represented at a hearing before an ALJ:

> To ensure valid waivers, ALJs must explain to pro se claimants "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees."

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991)); *Jozefyk v. Berryhill*, 923 F.3d 492, 496, (7th Cir. 2019).

"If the ALJ does not obtain a valid waiver, the matter must be remanded for a new hearing unless the Commissioner can establish 'that the ALJ fully and fairly developed the record.'" *Beth v. Astrue*, 494 F. Supp. 2d 979, 1000 (E.D. Wis. 2007) (quoting *Binion*, 13 F.3d at 245). While "[t]he ALJ does not act as counsel for claimant, but as an examiner who thoroughly develops the facts," the record must reflect that the claimant did not suffer prejudice from her lack of counsel. *Thompson*, 933 F.2d at 586 (citing *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)). If the Commissioner can establish this, "the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap." *Binion*, 13 F.3d at 245.

On May 16, 2018, Pfitzer was sent a written notice of her hearing. (Tr. 193-98.) The notice stated:

> You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

> Many representatives charge a fee. Some representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. If you get a representative, you or that person must notify us in writing.

6

(Tr. 195.) Attached to the notice was a pamphlet entitled, "Your Right to Representation." (Tr. 200-01.) The pamphlet contains all of the information the Seventh Circuit says an ALJ must provide to a claimant regarding her right to an attorney. Pfitzer signed an acknowledgement of receipt of the notice of hearing. (Tr. 213.)

Pfitzer argues, and the Commissioner does not deny, that he ALJ did not mention the "notice of hearing" form or "right to representation" form at the hearing. (ECF No. 20 at 2; Tr. 184-87, 200-01.) Pfitzer argues the ALJ erred by not explaining that a representative would be paid on a contingent fee basis. (ECF No. 11 at 11.) She argues there is no evidence that she received or read either form. (ECF No. 20 at 2.)

The Commissioner argues that the Seventh Circuit has held that, "so long as [the mailing] contains the required information, written notice adequately apprises a claimant of his right to counsel." (ECF No. 19 at 5) (quoting *Jozefyk*, 923 F.3d at 496-97). He states that "[t]he court noted that the written notice is especially effective 'when the ALJ issues the claimant an oral reminder at the hearing.'" (*Id.*) He also argues that a claimant's appearance at the correct time and place for a hearing suggests she received the hearing notice with the pamphlet attached. (*Id.*)

At Pfitzer's hearing the ALJ stated:

So then before we go any further I need to insure [sic] on the record that you understand your rights to representation… Now Ms. Pfitzer, you have the right to be represented by an attorney or a non-attorney, excuse me. A representative can obtain information about your claim, submit evidence, explain medical terms, help protect your rights and make any requests or give any notice about the proceedings before me. A representative may not

charge or receive a fee unless I approve it. If you appoint a representative you may be responsible for certain medical expenses – or for certain expenses such as copying medical records and that sort of thing. Some legal service organizations will offer legal representation free of charge if you satisfy the qualifying requirement for that organization… Nevertheless, a representative can present your evidence in a way that is most favorable to your case. Under the regulations, because you haven't spoken to anybody in our office about this issue before, this is the first time you've seen me, if you wanted to have some additional time to look for a representative, now that I've explained everything to you, we would postpone the hearing today…

(Tr. 43-45.) The ALJ asked Pfitzer if she understood her right to representation and if she nevertheless "want[ed] to proceed with the hearing today without a representative[.]" (Tr. 45-46.) Pfitzer responded, "we can continue." (Tr. 46.)

"[S]o long as it contains the required information, written notice adequately apprises a claimant of [her] right to counsel." *Jozefyk*, 923 F.3d at 497. And "[t]hat's especially true when the ALJ issues the claimant an oral reminder at the hearing." (*Id.*) Although she denies having received the pamphlet, Pfitzer signed an acknowledgement of receipt of the notice of hearing, to which the pamphlet was attached. (ECF No. 20 at 3; Tr. 213.) She was reminded of her rights at the hearing by the ALJ before affirmatively waiving her rights and continuing with the hearing. This was enough to waive her right to counsel. *See also John L. v. Berryhill*, No. 17 C 7537, 2019 WL 2601353, at *6 (N.D. Ill. June 25, 2019) ("The fact that Claimant was informed of his rights by mail instead of by the ALJ herself does not invalidate his waiver.") (citing *Josefyk* [sic], 923 F.3d at 497).

### 4.2. Medical Opinion Evidence

Dr. Emily Rademacher, Pfitzer's treating psychiatrist, on June 8, 2018, wrote a letter stating that Pfitzer was totally disabled in all major life areas due to combination of bipolar disorder, generalized anxiety disorder, ADHD, and fibromyalgia. (Tr. 933.) Dr. Rademacher stated that Pfitzer's mental impairments were not controlled despite treatment. (Tr. 933.) She opined that Pfitzer's fibromyalgia worsened in 2014, and her mental health declined as her physical health deteriorated. (Tr. 933.) According to Dr. Rademacher, Pfitzer's mental health symptoms made functioning at work impossible. (Tr. 933.)

The ALJ gave little weight to Dr. Rademacher's opinion that Pfitzer was unable to work due to mental impairments. (Tr. 29.) He found Dr. Rademacher's opinion "not supported by the objective findings about [Pfitzer's] mental functioning." (*Id.*) He stated that, "[a]lthough [Pfitzer] reported significant mental symptoms, Dr. Rademacher documented some good function during examinations." (*Id.*) The ALJ discussed Dr. Rademacher in August 2017 and then again in February 2018 documenting objective findings of good functioning on the part of Pfitzer. (*Id.*)

In contrast, the ALJ gave "great weight to [Dr. Esther Lefevre and Dr. Larry Kravitz's (state agency psychological consultants)] general assessments of moderate limitations[.]" (Tr. 30.) The state agency consultants offered their opinions on June 1, 2016, and January 18, 2017. (Tr. 97, 114, 134, 154.) Thus, Dr. Rademacher considered over fifteen

months of additional evidence that the state agency psychological consultants did not. (Tr. 29, 933.)

Pfitzer challenges the "little weight" the ALJ afforded the opinion of Dr. Rademacher. (ECF No. 11 at 12-17.) She argues that the evidence between January 18, 2017, and June 8, 2018, is important because it contains most of Pfitzer's psychiatric treatment notes with Dr. Rademacher. (ECF No. 20 at 6.)

In response, the Commissioner argues that the ALJ reasonably gave little weight to Dr. Rademacher's opinion because it was inconsistent with her own objective observations. (ECF No. 19 at 18-19.) He asserts that, "although a treating source opinion that does not meet the requirements for controlling weight must still be weighed using the factors provided in 20 C.F.R. § 404.1527(c)(1)-(6),… the ALJ is not required to explicitly address each of the factors in his opinion." (ECF No. 19 at 17) (citing *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018); *Elder*, 529 F.3d at 415-16; *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012)).

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (unpublished) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to

consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)).

While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (unpublished)).

Pfitzer argues that, in addition to the evidence of good functioning in Dr. Rademacher's notes, her notes also document "abnormalities." (ECF No. 11 at 13.) But those "abnormalities" were largely what Pfitzer reported to Dr. Rademacher. The only allegedly "abnormal" observations noted by Dr. Rademacher, as highlighted by Pfitzer, were that in January 2017 Pfitzer "appeared sad, cried off and on throughout the appointment, and paced" (ECF No. 11 at 14), in August 2017 Pfitzer "appeared irritable" and "stood and paced" (ECF No. 11 at 13), and in February 2018 Pfitzer "had only fair eye contact and constricted affect" (ECF No. 11 at 13-14). But the ALJ reasonably considered these "abnormal" observations, along with evidence of good functioning and documentation of Pfitzer's reported symptoms, to determine that "Dr. Rademacher's

opinion is not supported by the objective findings of [Pfitzer's] mental functioning." (Tr. 29.)

It is true that Dr. Rademacher considered more than a year of additional evidence from direct observation that the state psychologists did not have available to them. (Tr. 933.) Pfitzer argues that the more-recent treatment notes are more probative than the "MRIs showing new 'mild' or 'minimal' narrowing" that the court in *Keys v. Berryhill*, 679 Fed. Appx. 477, 481 (7th Cir. 2017), determined would not have changed the doctors' opinions. However, Pfitzer does not point to any evidence suggesting that her condition deteriorated after she was evaluated by the state agency psychologists. Thus, the court cannot conclude that, simply because Dr. Rademacher's opinion was more recent, it was "patently erroneous" for the ALJ to give the state experts' opinions more weight than he gave to Dr. Rademacher's opinion.

In short, the ALJ did not err in giving "little weight" to Dr. Rademacher's opinion based on its inconsistency with medical opinions from non-treating sources and his conclusion that Dr. Rademacher's opinion was "not supported by the objective findings about [Pfitzer's] mental functioning."

### 4.3. Subjective symptoms

#### 4.3.1. Symptom Evaluation Standard § 404.1529(a)

Pfitzer maintains that the ALJ improperly deviated from SSA regulations and rulings by holding her allegations to a heightened "not-entirely-consistent-with-the-record" standard. (ECF No. 11 at 17-20; ECF No. 20 at 3-6.)

At the outset of his discussion of Pfitzer's alleged symptoms the ALJ outlined the correct legal standard, noting that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 23 (citing 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 SSR LEXIS 4).) While the ALJ later used the phrase "not entirely consistent" (Tr. 24), a review of the decision shows that the ALJ applied the correct standard. The ALJ did not require Pfitzer's allegations to match the evidence exactly. Rather, he considered Pfitzer's alleged symptoms in light of the evidence as a whole and concluded that some, but not all, of those symptoms were consistent with the record. (*See* Tr. 23-28.)

#### 4.3.2. Subjective Symptom Evaluation

In making his RFC determination the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304 at *3; *see also* 20 C.F.R. § 404.1529. "Second, once an underlying physical

or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.…" SSR 16-3p, 2017 WL 5180304 at *3. The ALJ's evaluation of a claimant's symptoms is entitled to "special deference" and will not be overturned unless it is "patently wrong." *Summers*, 864 F.3d at 528 (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

The ALJ offered the following boilerplate regarding Pfitzer's subjective symptoms:

> After careful consideration of the evidence, the undersigned finds that [Pfitzer's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Pfitzer's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons stated in this decision.

(Tr. 24.) Pfitzer argues that the ALJ's reasons for determining that her statements are "not entirely consistent" with the evidence were not legally sufficient. (ECF No. 11 at 17-24.)

In response, the Commissioner argues that "the ALJ considered the conflicting evidence, but reasonably viewed the evidence as not supporting Pfitzer's allegations of disabling symptoms." (ECF No. 19 at 23.) He further argues that "[t]he ALJ was not required to disprove Plaintiff's testimony with conclusive evidence." (ECF No. 19 at 23) (internal citations omitted).

In support of his decision that Pfitzer's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence, the ALJ stated that,

> Although the claimant had fibromyalgia and migraines, she still exhibited reasonably good function during a number of examinations including full orientation, a normal gait, and normal strength. The physical therapy records showed that she had improved function and reduced headaches with treatment. While she had mental impairments with abnormalities upon examination, the treatment records indicated that her conditions improved with a sufficient medication regimen… Her mental impairments were treated on an outpatient basis.

(Tr. 28.)

As stated by Pfitzer, the ALJ did not explain how evidence that Pfitzer was fully oriented, had a normal gait, and normal strength was inconsistent with her alleged limits from either fibromyalgia or headaches. Nor did the ALJ cite any evidence to support his conclusion that Pfitzer's mental impairments improved with medication. The record does not evidence any sustained improvement in Pfitzer's mental health symptoms with medication.

And as for his observation that Pfitzer's mental impairments were treated on an outpatient basis, "the institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). A person may have severe limits on her ability to function while in a workplace without needing inpatient mental health treatment. *See Punzio v. Astrue*, 630

F.3d 704, 712, (7th Cir. 2011) (citing *Bauer v. Astrue*, 532 F.3d 606, 608-09 (7th Cir. 2008)). It is impermissible for an ALJ to "discount[] [a claimant]'s symptoms because [she] received outpatient treatment as opposed to inpatient care." *Rosario v. Saul*, 2019 U.S. Dist. LEXIS 142794, 2019 WL 3997139, \*33 (E.D. Wis. Aug. 22, 2019). The court cannot determine whether the ALJ would have reached the same conclusion regarding Pfitzer's mental symptoms if he had not drawn that impermissible inference. The ALJ erred in concluding that the fact that Pfitzer received only outpatient mental health care was evidence that her statements about the intensity, persistence, and limiting effects of her symptoms were unsupported. (Tr. 28.)

On remand the ALJ shall reevaluate the intensity, persistence, and limiting effects of the mental symptoms from Pfitzer's medically determinable impairments.

### 4.4. RFC assessment

Pfitzer argues that the ALJ erred by not including in the RFC limitations that are supported by the record, including her pain, fatigue, and headaches; limitations on concentration, persistence and pace; and interpersonal deficits. (ECF No. 13 at 25-30.) "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

### 4.4.1. Pain, Fatigue, and Headaches

Pfitzer argues that there is no evidence "that limiting [her] to sedentary work was enough to accommodate [her] impairments and symptoms or that [she] could manage occasional postural activities" and that "[t]he ALJ pointed to no evidence that despite pain, [Pfitzer] could sit up to 6 hours in an 8-hour workday." (ECF No. 11 at 25-26.) She argues that "[t]he ALJ should have discussed if pain, headaches, and/or fatigue would take [Pfitzer] off-task or to miss work more than permitted" and should have considered the combined impact of her impairments. (ECF No. 11 at 27, 30.)

In response, the Commissioner argues that, "[i]n reaching his RFC assessment, the ALJ looked to the conflicting evidence. Such evidence included the objective medical evidence, [Pfitzer's] improvement with treatment, and the medical opinions. Because the ALJ reasonably weighed that evidence, his decision should not be disturbed." (ECF No. 19 at 8.)

In discussing Pfitzer's severe impairments the ALJ said the following about limitations due to her pain, fatigue, and headaches:

> Sedentary work with occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling and crawling is supported by the medical evidence showing that [Pfitzer] had fibromyalgia with ongoing symptoms of chronic pain and fatigue, which would likely reduce her abilities to lift and carry heavy weight as well as engage in postural activities on a frequent or constant basis.

> The residual functional capacity states that [Pfitzer] is also limited to no climbing of ladders, ropes, or scaffolds and no exposure to unprotected heights or unprotected moving machinery. These restrictions are supported

by the evidence showing that the claimant had migraines, chronic pain, and fatigue.

More restrictive limitations for [Pfitzer's] physical impairments are not supported by the overall evidence. While she exhibited physical abnormalities and reported ongoing symptoms, she had some good function such as decreased frequency of headaches with treatment, increased cervical rotation with treatment, intact reflexes, intact sensation, good muscle tone and strength, and a steady and appropriate gait and station.

(Tr. 28 (internal citations omitted).)

Sedentary work

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Pfitzer does not state what additional limitations the ALJ should have included in the RFC assessment to address her limitations from pain, fatigue, and headaches. The ALJ provided some explanation for how the limitations he included addressed these issues, and the court cannot conclude that his conclusion was patently wrong.

### 4.4.2. Concentration, Persistence, and Pace

Pfitzer argues that, although the ALJ found she was moderately limited in concentration, persistence, and pace, this limitation is not adequately accounted for in the RFC. (ECF No. 11 at 26-28.) She argues that "[t]he ALJ should have made specific findings

of what caused [Pfitzer's] limits concentrating, persisting, or maintaining pace, then, explained how those specific limitations were addressed and accommodated by the limits the ALJ included in his RFC assessment." (ECF No. 11 at 28.) In response, the Commissioner argues that the RFC does address her moderate limitation and that "the ALJ looked to conflicting evidence," including "objective medical evidence, [Pfitzer's] improvement with treatment, and medical opinions." (ECF No. 19 at 8.)

> The ALJ stated that the RFC
>
> accommodates [Pfitzer's] moderate mental limitations with the following restrictions: she is limited to understanding, carrying out and remembering no more than simple instructions; simple, routine tasks performed in an environment free from fast paced production requirements, involving only simple work-related decisions, and few, if any, workplace changes; and only occasional interaction with the public, coworkers or supervisors.

(Tr. 28.) He further stated that "more significant mental restrictions are not supported by the evidence showing that [Pfitzer] exhibited reasonably good function during a number of mental examinations while taking medications." (Tr. 28.)

It is well-established that "[b]oth the RFC and the hypothetical question presented to a VE must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (unpublished) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). "The ALJ need not use this exact terminology, so long as the phrasing 'specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform.'" (*Id.*) (alteration in original); *see Winsted v. Berryhill*, 923 F.3d 472, 477

(7th Cir. 2019) ("Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question.") (emphasis in original). "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, No. 19-1394, 796 F. App'x 910, 914 (7th Cir. 2019) (unpublished).

State agency psychological consultants Dr. Esther Lefevre and Dr. Larry Kravitz both opined that Pfitzer was moderately limited in her "ability to carry out detailed instructions," in her "ability to maintain attention and concentration for extended periods," in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 101, 158.)

"[The Seventh Circuit] [has] repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015) (quoting *Yurt*,

758 F.3d at 858-59). Although the RFC includes more limitations than just "simple, routine and repetitive tasks," the additional limitations address Pfitzer's social functioning and workplace adaptation rather than deficiencies in concentration, persistence, and pace. (*Id.* at 815) ("'Few if any work place changes' with limited 'interaction with coworkers and supervisors' deals largely with workplace adaptation rather than concentration, pace, or persistence."). The ALJ's RFC assessment does not adequately address the limitations found by Pfitzer's medical providers.

Accordingly, on remand the ALJ shall ensure that Pfitzer's moderate limitation in concentration, persistence, and pace are incorporated into the RFC assessment.

### 4.4.3. Interpersonal Deficits

Pfitzer argues that the RFC assessment did not adequately address her interpersonal deficits. (ECF No. 11 at 26-29.) She argues that a limitation to "occasional interaction with the public, coworkers or supervisors" does not address her moderate limitation in interacting with others because "the ALJ pointed to no evidence that it was the frequency of [Pfitzer's] interactions with others that affected her social functioning[.]" (ECF No. 11 at 28.) In response, the Commissioner argues that the ALJ generally accounted for her social limitations noted in Dr. Lefevre and Dr. Kravitz's opinions. (ECF No. 19 at 14-16.)

To support his finding that Pfitzer had a moderate limitation in interacting with others, the ALJ stated he

gave great weight to the consultants' general assessments of moderate limitations in these areas. As discussed in finding #4, moderate limitations for these areas are supported by the overall evidence at the hearing level… While these restrictions are slightly different from those set forth by the consultants, they are largely supported by evidence at the hearing level.

(ECF No. 10-3 at 31; Tr. 30.)

Pfitzer does not articulate what additional limitation(s) the ALJ should have included in the RFC assessment to account for her interpersonal deficits. However, she appears to be arguing that a limitation that addressed the *quality* of her interactions, rather than *frequency*, would have been more appropriate. *See Wartak v. Colvin*, No. 2:14-CV-401-PRC, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016); (ECF No. 11 at 29).

Dr. Lefevre found that Pfitzer "is capable of less stressful, routine work that would require occasional contact with others." (Tr. 97.) Dr. Lefevre and Dr. Kravitz both found that Pfitzer would be moderately limited in her "ability to work in coordination with or in proximity to others without being distracted by them," (Tr. 101, 158), but she was not significantly limited in her "ability to interact appropriately with the general public" (Tr. 101, 159). They also opined that Pfitzer's "[s]uperficial interactions with others [are] intact, [she is] able to ask questions, request assistance and does not require special supervision. [She has] [m]oderate difficulty effectively dealing with negative feedback [and] criticism… These episodes would be moderately distracting to others, as well as others being distracting to her." (Tr. 101, 158.)

The RFC assessment regarding Pfitzer's interpersonal deficits is supported by substantial evidence. Therefore, the court finds no error in this part of the ALJ's decision.

**5. Conclusion**

In her conclusion, Pfitzer "respectfully requests this Court reverse the Commissioner's final decision, without a remand for re-hearing, awarding benefits." (ECF No. 11 at 30.)

A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of October, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge